**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WILLIAM FRANCIS TRUANT, | * |
| *Plaintiff*, | * |
| v. | *   Civil No. RDB-23-00579 |
| H.R. PERSUHN, *et al.*, | * |
| *Defendants.* | * |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff William Francis Truant ("Plaintiff" or "Truant") initially filed this action in the Circuit Court for Baltimore County, and it was removed by the Defendants to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (ECF No. 1.)  Truant now brings this suit in an eight-count Amended Complaint against Defendants H.R. Persuhn ("Persuhn"), Jeremy Boothe ("Boothe"), Alborz Doorandish ("Doorandish"), Gregory A. Page ("Page"), Wesley Allinson ("Allinson"), Kenneth A. Lucas ("Lucas"), Cheyne E. Hicks ("Hicks") (collectively, "Officer Defendants"), and Baltimore County Police Department ("BCPD")[1] for claims stemming from Plaintiff's alleged unlawful arrest on

---

[1] As an initial matter, Defendants note in their Combined Motion to Dismiss that Baltimore County Police Department is not *sui juris*. (ECF No. 8-1 at 1–3.) While Plaintiff concedes that Baltimore County is the proper entity to this lawsuit—not BCPD—Truant argues that the proper remedy is not dismissal. (ECF No. 11 at 15–17.) Instead, Plaintiff asks this Court to substitute Baltimore County for BCPD as a defendant pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that a court must freely give leave when justice so requires. Plaintiff's Amended Complaint asserts Count VII and VIII against BCPD. (ECF No. 4 at 23–24.) While Plaintiff's claim for negligent hiring, retention, or supervision (Count VII) fails for substantive reasons, this is the sole defect in Plaintiff's indemnification claim (Count VIII). Accordingly, the Clerk of this Court will simply substitute the proper defendant, Baltimore County, for the Baltimore County Police Department. Herein, where this Court refers to Baltimore County Police Department or BCPD, it is referring to the substituted Defendant Baltimore County.

December 29, 2019. (ECF No. 4.)[2] Specifically, Truant alleges assault against Defendant

Persuhn (Count I); battery against all Officer Defendants (Count II); malicious prosecution

against all Officer Defendants (Count III); false imprisonment against all Officer Defendants

(Count IV); a federal claim of violation of 42 U.S.C. § 1983 against all Officer Defendants

(Count V); violation of Article 24 of the Maryland Declaration of Rights against all Officer

Defendants (Count VI); negligent hiring, retention, or supervision against BCPD (Count VII);

and indemnification against BCPD[3] (Count VIII). (*Id.*)

Pending[4] before this Court is Defendants' Combined Motion to Dismiss (ECF No. 8).

and Officer Defendants' Motion to Modify Letter Order, or in the Alternative for Leave to

File a Motion for a More Definite Statement (ECF No. 13). The parties' submissions have

been reviewed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023).

For the reasons explained below, Defendants' Combined Motion to Dismiss (ECF No.

8), construed as a motion for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c), is GRANTED IN PART and DENIED IN PART. Specifically, Defendants'

Combined Motion to Dismiss (ECF No. 8) is GRANTED as to Truant's claims for assault

(Count I), malicious prosecution (Count III), and negligent hiring, retention, or supervision

(Count VII). Accordingly, Count I, Count III, and Count VII are DISMISSED WITH

PREJUDICE. Defendants' Combined Motion to Dismiss (ECF No. 8) is DENIED as to the

remaining counts—Counts II, IV, V, VI, and VII. Accordingly, the following claims remain

---

[2] This Court cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

[3] Plaintiff's Amended Complaint asserts Count VIII against Baltimore County. (ECF No. 4 at 24.)

[4] Also pending before this Court is the Officer Defendants' Motion to Modify Letter Order, or in the Alternative for Leave to File a Motion for a More Definite Statement (ECF No. 13), which, as further explained below, is DENIED.

pending: battery (Count II); false imprisonment (Count IV); violation of 42 U.S.C. § 1983 (Count V); violation of Article 24 of the Maryland Declaration of Rights (Count VI); and indemnification (Count VIII), which Defendants Persuhn, Boothe, Doorandish, Page, Allinson, Lucas, Hicks, and Baltimore County (collectively, "Defendants") shall answer within fourteen (14) days of the date of this Memorandum Opinion and Order.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Amended Complaint (ECF No. 4) and accepted as true for the purpose of Defendants' Motion to Dismiss (ECF No. 8).

Plaintiff William Francis Truant's claims stem from his alleged illegal arrest on December 29, 2019. (ECF No. 4 ¶ 1.) Truant, a resident of Baltimore County, alleges that prior to his arrest he had researched BCPD's finances and became aware that officers engaged in what he perceived to be persistent and unnecessary overtime work. (*Id.* ¶ 4.) After learning of these overtime practices, Truant requested to meet with BCPD Police Chief Melissa Hyatt to discuss his findings and possible solutions. (*Id.* ¶ 5.) In late November 2019, Truant and BCPD Captain John Young discussed Plaintiff's concerns over the telephone. (*Id.*) During this call, Truant shared specific examples of overtime waste that he had witnessed. (*Id.* ¶ 6.) Truant alleges that BCPD did not address his concerns and instead placed his name on a "roll-call"

notification that provided officers at BCPD's Cockeysville Precinct with information relevant to their duties. (*Id.* ¶ 7, ¶ 7 n.1.)

Sometime after 3:00 PM on December 29, 2019, Truant alleges that he was driving home towards his home in Hunt Valley, Maryland, when he pulled over in a church parking lot at 116 Ashland Road in Cockeysville, Maryland to call his wife. (*Id.* ¶¶ 22–23.) Plaintiff alleges that he then noticed an officer—later identified as Defendant Persuhn—conducting a traffic stop of another citizen. (*Id.* ¶ 24.) Plaintiff alleges that he attempted to call his wife but dropped his phone between the seats of his vehicle before completing the call. (*Id.* ¶ 25.) Truant alleges that as he reached for his phone, Defendant Persuhn glared in his direction before moving his cruiser at an unusual speed and stopping behind Plaintiff's vehicle, all without activating the cruiser's emergency lights or his body camera.[5] (*Id.* ¶¶ 26–27.) Truant alleges that, fearing a collision, he moved his vehicle a short distance forward. (*Id.* ¶ 28.) Truant alleges that Defendant Persuhn then exited his cruiser, aimed his service weapon at Plaintiff without justification, and informed Plaintiff that he was the subject of an investigation. (*Id.* ¶ 29–30.)

Truant alleges that he feared for his life and complied with Defendant Persuhn's orders to place his hands on the outside of the vehicle. (*Id.* ¶ 31.) He further alleges that after he announced that he was calling 911, Defendant Persuhn confiscated Truant's phone before Plaintiff could speak to the operator. (*Id.* ¶¶ 31–32.) Plaintiff alleges that the 911 call continued recording while Defendant Persuhn used his police radio to falsely notify dispatch that a

---

[5] In his Amended Complaint, Truant alleges that although Defendant Persuhn stated in a police report that Plaintiff's car was moving and Plaintiff failed to rest in a designated parking space, the parking lot had no designated spaces. (ECF No. 4 ¶ 28 n.3.)

suspicious suspect was following him. (*Id.* ¶¶ 33–34.) According to Plaintiff, Defendants Boothe, Doorandish, Page, Allinson, Lucas, and Hicks responded to the scene and aided or acquiesced in forcibly removing Plaintiff from his vehicle. (*Id.* ¶ 35.)

Truant alleges that after removing him from his vehicle, the Officer Defendants slammed his neck on to the top of his open car door, struck him several times in the head, and ordered him to place his hands behind his back. (*Id.* ¶ 36.) According to Truant, the Officer Defendants' actions caused him to become disoriented, and Truant told the Officer Defendants that the position of his body did not allow him to comply with their orders. (*Id.*) Truant alleges that the Officer Defendants then violently placed him in handcuffs and pushed him to the ground, causing him to strike his head on the bottom corner of his open car door. (*Id.* ¶ 37.) Plaintiff claims that the Officer Defendants ordered him to sit on the wet ground for several minutes before they placed him into a police cruiser. (*Id.* ¶ 38.) According to Truant, Defendant Booth, the highest-ranking officer present at the scene, asked Defendant Persuhn about the justification for Truant's arrest. (*Id.* ¶ 39.) Plaintiff alleges that thereafter, Defendants Persuhn and Booth disengaged the audio function of their body cameras in violation of BCPD policy.[6] (*Id.* ¶ 40.) While Defendant Persuhn has stated that his interaction with Truant began after Plaintiff did "donuts" in the parking lot, Plaintiff asserts that his vehicle is unable to perform such maneuvers. (*Id.* ¶ 75 n.5.)

Truant alleges that he was taken to the BCPD Precinct 7 in Cockeysville, Maryland and detained without knowledge of the charges against him. (*Id.* ¶ 41.), Plaintiff alleges that while

---

[6] Plaintiff alleges that repeated requests for body camera footage from Defendant Persuhn's prior traffic stop have been denied, and a custodian of BCPD has certified that no such footage exists. (ECF No. 4 ¶ 27 n.2.)

awaiting processing he began to suffer blurry vision and lightheadedness from the blunt force trauma during his arrest. (*Id.* ¶ 44.) Plaintiff alleges that his initial requests for medical assistance were ignored, but after significant time had passed a BCPD officer called an ambulance to take Truant to the hospital. (*Id.* ¶¶ 44–47.) According to Plaintiff, he lost consciousness for several minutes during the ride to the hospital. (*Id.* ¶ 47.) Plaintiff alleges that he was diagnosed with a concussion before being returned to police custody and released on his own recognizance at 12:39 AM. (*Id.* ¶¶ 50, 52.)

Plaintiff alleges that the BCPD facilitated the assault against him and acquiesced in Defendant Persuhn's unethical policing by failing to properly reprimand, discipline, or retrain Persuhn after his previously documented misconduct.[7] (*Id.* ¶¶ 64–65.) Plaintiff asserts that BCPD had knowledge of widespread misconduct by its officers before December 2019 and therefore his illegal arrest was foreseeable to BCPD.[8] (*Id.* ¶ 67.) Plaintiff alleges that his improper arrest and assault would not have occurred if BCPD had properly trained its officers in de-escalation tactics. (*Id.* ¶¶ 74–75.)

According to Plaintiff, he was fictitiously charged with second degree assault on a law enforcement officer; resisting arrest; obstructing and hindering; failure to display license on demand; failure to display registration card on demand; driving a motor-vehicle in a manner intended to cause skidding; and spinning wheels. (*Id.* ¶ 53.) On September 15, 2021, the State's Attorney Office for Baltimore County moved to place Plaintiff's matter on the stet docket, which Truant accepted upon advice of his defense counsel. (*Id.* ¶ 54.) Plaintiff alleges that

---

[7] Truant alleges that Defendant Persuhn has a history of police misconduct and references a 2018 viral video of Persuhn conducting an arrest in a combative and aggressive manner. (ECF No. 4 ¶¶ 60–63.)
[8] Truant states that Defendant Page—who was present at Plaintiff's arrest—fatally shot Eric Sopp, an unarmed man suffering a mental health crisis, during an unjustified stop on November 26, 2019. (*Id.* ¶ 69.)

since the events of his arrest, he has been unable to return to work, placed on Social Security Disability benefits, and diagnosed with anxiety disorders and physical health conditions related to the injuries he sustained during his December 29, 2019, arrest. (*Id.* ¶¶ 81–88.)

On December 21, 2022, Truant initiated the instant action in the Circuit Court for Baltimore County. (ECF No. 3.) Plaintiff's Amended Complaint lodges eight counts against the Defendants: assault against Defendant Persuhn (Count I); battery against all Officer Defendants (Count II); malicious prosecution against all Officer Defendants (Count III); false imprisonment against all Officer Defendants (Count IV); violation of 42 U.S.C. § 1983 against all Officer Defendants (Count V); violation of Article 24 of the Maryland Declaration of Rights against all Officer Defendants (Count VI); negligent hiring, retention, or supervision against BCPD (Count VII); and indemnification against BCPD (Count VIII). (ECF No. 4.)

On March 4, 2023, Defendants removed the action to this Court based on federal question jurisdiction. (ECF No. 1). On April 6, 2023, twenty days after the deadline for a responsive pleading,[9] Defendants untimely filed a Combined Motion to Dismiss (ECF No. 8) as to Counts I, II, III, IV, VI, VII, and VIII. (ECF No. 8; ECF No. 11 at 12.) Plaintiff responded in opposition. (ECF No. 11.) Defendants' Combined Motion to Dismiss (ECF No. 8) is ripe for review.

On December 1, 2023, this Court issued a Letter Order instructing Defendants in the above-captioned matter to file an Answer or other responsive pleading to Count V—the sole basis for this Court's federal question jurisdiction—by 5:00 PM on December 5, 2023. (ECF

---

[9] All Defendants received service by February 24, 2023, and Defendants removed this action on March 3, 2023, meaning Defendants were required to answer or present other defenses or objections by March 17, 2023 at the latest. (ECF No. 11 at 11); FED. R. CIV. P. 81(c)(2).

No. 12.) At 11:52 PM on December 5, 2023, Officer Defendants filed a Motion to Modify
Letter Order, or in the Alternative for Leave to File a Motion for a More Definite Statement
(ECF No. 13). Therein, they ask this Court to modify the Letter Order to stay their obligation
to file a responsive pleading to Count V until after the Court rules on the pending partial
dismissal motion, (*id.* at 1–2), or, in the alternative, they request leave to file a Rule 12(e)
Motion for a More Definite Statement as to Count V. (*Id.* at 2–5.)

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the
pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil
Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief
can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not
to resolve contests surrounding the facts, the merits of a claim, or the applicability of
defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In ruling on a motion
to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s]
them in the light most favorable to the plaintiff." *Wikimedia*, 857 F.3d at 208 (citing *SD3*, 801
F.3d at 422).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to
"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009)
(quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard,
a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the
elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*,
716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

## ANALYSIS

Before turning to the Defendants' Combined Motion to Dismiss (ECF No. 8), this Court briefly addresses the Officer Defendants' Motion to Modify Letter Order, or in the Alternative for Leave to File a Motion for a More Definite Statement (ECF No. 13). Therein, the Officer Defendants ask the Court to modify its December 1, 2023 Letter Order to stay their obligation to file a responsive pleading to Count V until after the Court rules on the pending partial dismissal motion, (*id.* at 1–2), or, in the alternative, they request leave to file a Rule 12(e) Motion for a More Definite Statement as to Count V. (*Id.* at 2–5.) First considering their request to modify the Letter Order, the Officer Defendants correctly note that this Court has held that "the majority view [is] that a partial motion to dismiss stays the time to file a responsive pleading." *Robinson v. Bd. of Educ.*, No. 1:22-cv-01102-ELH, 2023 U.S. Dist. LEXIS 183342, at *1 n.3 (D. Md. Oct. 12, 2023) (citing *Singhal & Co., Inc. v. VersaTech, Inc.*, No. JKB-19-01209, 2019 U.S. Dist. LEXIS 147754, at *18 n.2 (D. Md. Aug. 28, 2019); *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2012 U.S. Dist. LEXIS 159658, at *10 n.1 (D. Md. Nov. 7, 2012). Because this Court is now ruling on the partial motion to dismiss, the Officer Defendants'

request to stay their obligation to file a responsive pleading to Count V is DENIED AS MOOT.

Considering the Officer Defendants' suggestion that a more definitive statement is required for Count V, this Court first notes that Rule 12(e) motions are typically filed contemporaneous to a Rule 12(b)(6) motion for failure to state a claim. Rule 12(e) motions "allow a defendant to move for a more definite statement if the complaint 'is so vague or ambiguous that [he] cannot reasonably be required to frame a responsive pleading.'" *Hodgson v. Va. Baptist Hosp., Inc.* 482 F.2d 821, 822–23 (4th Cir. 1995) (citing FED. R. CIV. P. 12(e)). Thus, "[w]here a party has enough information to frame an adequate answer, a court should deny the Rule 12(e) motion and avoid delay in maturing the case." *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904, 917 (M.D.N.C. 2005) (citing *Hodgson*, 482 F.2d at 822).

Quite simply, allowing the Officer Defendants to file a Rule 12(e) motion at this stage would be imprudent and more importantly lacks merit. This Court would be hard-pressed to conclude that Count V is so vague and ambiguous that the Officer Defendants could not reasonably be required to frame a responsive pleading. Defendants have moved to dismiss Count VI of the Amended Complaint, which alleges violation of Article 26 of the Maryland Declaration of Rights. Article 26 is in *pari materia* with the prohibitions against unreasonable searches and seizures embodied in the Fourth Amendment of the U.S. Constitution. *Bass v. State*, 35 A.2d 155, 157 (Md. 1943). Accordingly, the same facts that support Truant's Article 26 claim apply with equal force to his § 1983 claim brought under the Fourth Amendment. *Okwa v. Harper*, 757 A.2d 118, 140–41(Md. 2000). The same analysis discussed *infra* with respect to Count VI applies to Count V as well.

10

When a Rule 12(e) motion—or something akin to it—is untimely or inappropriate under the circumstances, courts have often reminded the parties that elucidation of the pleading's allegations is normally accomplished through discovery. *See Poole v. White*, 2 F.R.D. 40, 41 (N.D.W. Va. 1941) ("The great weight of authority is to the effect that bills of particulars should be limited to information necessary to enable the preparation of responsive pleadings, and that other information should be secured by interrogatories or discovery."); 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1378 (3d ed. 2020) ("[E]ven if a motion under Rule 12(e) proves to be untimely or inappropriate, the movant should be able to obtain the desired information through the deposition and discovery process."). Indeed, as many courts have noted, Rule 12(e) motions are disfavored precisely because of the liberal pleading and discovery available under the Federal Rules. *See, e.g., Frederick v. Koziol*, 727 F. Supp. 1019, 1020–21 (E.D. Va. 1990). Accordingly, Defendants' request for leave to request a more definitive statement as to Count V is DENIED.

Turning to the dismissal motion, Defendants move to dismiss Counts I, II, III, IV, VI, VII, and VIII. (ECF No. 8.) Plaintiff concedes that his assault claim (Count I) is time-barred because the one-year statute of limitations expired on December 29, 2020. (ECF No. 11 at 22.)  Accordingly, that Count will be DISMISSED WITH PREJUDICE. This Court will address Counts II, III, IV, VI,[10] VII, and VIII in turn, and some counts are consolidated where appropriate.

---

[10] As previously noted, this Court's analysis of Plaintiff's Article 26 claim in Count VI also applies to Truant's § 1983 claim in Count V.

### I.      Plaintiff's Procedural Arguments

Truant contends that Defendants waived their opportunity to file a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure by filing their Combined Motion to Dismiss three weeks late. (ECF No. 11 at 6, 13.) Truant argues that this Court should enter a directed verdict and order discovery upon the limited issue of damages, remand the matter to the Circuit Court for Baltimore County, or dismiss the Motion in its entirety as untimely. (*Id.* at 6–7.) This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction over Plaintiff's § 1983 claim.[11] 28 U.S.C. § 1331; *see also Packett v. Univ. of Md. Med. Ctr.*, Civ. No. RDB-17-1630, 2017 WL 5903759, at *2 (D. Md. Nov. 30, 2017) (noting federal question jurisdiction attaches when plaintiff's well-pleaded complaint includes a federal cause of action); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809 (1986); *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005). As currently pled, this Court has jurisdiction over this matter. Therefore, remand is improper at this stage.

Rule 12(b) requires that a motion to dismiss for failure to state a claim or lack of subject matter jurisdiction "be made before pleading if responsive pleading is allowed." FED. R. CIV. P. 12(b). In actions that defendants have removed to federal court, Rule 81(c)(2) requires a defendant who did not answer before removal to answer or present other defenses or objections:

> within the longest of these periods: (A) 21 days after receiving—through service or otherwise—notice of the initial pleading stating the claim for relief; (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or (C) 7 days after the notice of removal is filed.

---

[11] As discussed throughout this Memorandum Opinion, Defendants have not filed a responsive pleading to Count V, which is the basis for this Court's federal question jurisdiction over this matter.

FED. R. CIV. P. 81(c)(2). Exceptions to 12(b) motions fall under Rule 12(h)(2), which allows a defendant to bring a motion to dismiss for failure to state a claim or for lack of subject matter jurisdiction "by a motion under Rule 12(c)." FED. R. CIV. P. 12(h)(2)(B). Rule 12(c) states that a motion for judgment on the pleadings may be brought after pleadings are closed but early enough so as not to delay trial. FED. R. CIV. P. 12(c).

The Fourth Circuit has recognized that a defendant's untimely motion to dismiss pursuant to 12(b)(6) may be considered as a Rule 12(c) motion. *Edwards v. City of Goldsboro*, 178 F.3d 213, 243 (4th Cir. 1999). A Rule 12(c) motion receives the same standard of review as a Rule 12(b)(6) motion. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012); *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002); *Attkisson v. Bridges*, No. RDB-20-0068, 2021 WL 6123267, at * 3 (D. Md. Dec. 27, 2021). Here, Defendants' Motion to Dismiss is untimely, but Plaintiff's counsel concedes that Defendants' counsel requested additional time to respond to Plaintiff's Complaint.[12] (ECF No. 11 at 12.) Plaintiff does not proffer that Defendants' Motion was made so late as to delay the start of trial. Accordingly, this Court will construe Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) as a Motion for Judgment on the Pleadings pursuant to Rule 12(c).

## II.   LGTCA Notice Requirements

As Plaintiff and Defendants recognize, Maryland's Local Government Tort Claims Act ("LGTCA") requires plaintiffs bringing tort claims against municipalities to either give notice or substantially comply with the LGTCA's notice requirements. MD. CODE ANN., CTS. & JUD.

---

[12] Plaintiff did not agree to Defendants' request, (ECF No. 11 at 12), and Defendants did not file a motion with this Court to extend time.

PROC. § 5-304(b)(1). Under the LGTCA, a plaintiff must give notice of a claim against Baltimore County to the county solicitor in person or via certified mail within one year after the injury. *Id.* § 5-304(b)(1), (c)(1), (c)(3)(iii). Alternatively, the LGTCA considers its notice requirement fulfilled if, within one year after the injury, "the defendant local government has actual or constructive notice of (1) [t]he claimant's injury; or (2) [t]he defect or circumstances giving rise to the claimant's injury." *Id.* § 5-304(e). The LGTCA further notes that even absent the required notice, a court may entertain an action upon plaintiff's motion and showing of good cause "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice." *Id.* § 5-304(d).

Maryland courts have held that a plaintiff substantially complies with the LGTCA notice requirements when the plaintiff: (1) makes some kind of effort to provide the requisite notice; (2) in fact gives some kind of notice; (3) gives requisite and timely notice of facts and circumstances giving rise to the claim; and (4) provides notice that fulfills the LGTCA notice requirement's purpose of apprising the "local government of its possible liability at a time when [the local government] could conduct its own investigation." *Ellis v. Housing Auth. Of Balt. City*, 82 A.3d 161, 167 (Md. 2013) (quoting *Faulk v. Ewing*, 808 A.2d 1262, 1272 (Md. 2002)). "Thus, substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim." *Huggins v. Prince George's Cnty.*, 683 F.3d 525, 538 (4th Cir. 2012) (quoting *Hansen v. City of Laurel*, 996 A.2d 882, 891 (Md. App. 2010)).

Here, Truant has substantially complied with LGTCA notice requirements because he provided the county solicitor with actual notice of his intent to sue within one year of the

14

injury. Although Plaintiff did not meet the requirement to send notice either in person or via certified mail, Plaintiff in fact mailed notice of his intent to file the instant action to the Baltimore County solicitor via standard United States mail within one year of the injury. (ECF No. 11 at 15; ECF No. 4 ¶ 11.) Plaintiff's letter fulfilled the purpose of the LGTCA notice requirements by apprising Baltimore County of its possible liability when it could still conduct its own investigation. Similarly, because the letter informed the Baltimore County solicitor of Plaintiff's intent to sue, Defendants received actual notice of Plaintiff's injury sufficient to meet the requirements of the LGTCA § 5-304(e)(1). *See, e.g.*, *Faulk*, 808 A.2d at 1274, 1278 (holding plaintiff substantially complied with LGTCA notice requirements by giving actual notice to the insurance entity charged with investigating his claim against the government).

### III.   Battery (Count II) & False Imprisonment (Count IV)

Defendants assert that Plaintiff's battery claim (Count II) and false imprisonment claim (Count IV) should be dismissed because Plaintiff has not alleged actual malice sufficient to overcome Officer Defendants public official immunity.[13] (ECF No. 8 at 2.) Defendants argue that actual malice requires clear and precise factual allegations that demonstrate malicious acts, although malice may also be inferred from a public official's unjustified use of malignant force. (*Id.* at 7.) Defendants contend that Plaintiff merely raises conclusory allegations unsupported by facts that show Officer Defendants knew of Plaintiff before his arrest. (*Id.*)

Maryland recognizes public official immunity under both common law and the LGTCA. At common law, public official immunity shields public officials who engage in

---

[13] Defendants also challenge Plaintiff's battery and false imprisonment claims on the grounds that Plaintiff failed to comply with LGTCA notice requirements. (ECF No. 8 at 1.) As discussed *supra*, this argument fails because Plaintiff substantially complied with the LGTCA's notice requirements.

negligent acts while performing discretionary duties. *Houghton v. Forrest*, 989 A.2d 223, 228 (Md. 2010). The Supreme Court of Maryland has long held that "the LGTCA does not waive any preexisting immunity against suit held by the local government or its employees." *Rounds v. Md.-Nat. Cap. Park and Planning Comm'n*, 109 A.3d 639, 649 (Md. 2015); *Williams v. Maynard*, 754 A.2d 379, 388 (Md. 2000); *see also* MD. CODE ANN., CTS. & JUD. PROC. § 5-507(a)(1) (2013) (codifying common law immunity for public officials who act without malice and within the scope of their employment). Instead, the LGTCA designates a local government as de-facto "insurer," obligated to indemnify its employees from tort liability unless they acted with malice or gross negligence. *Hansen v. City of Laurel*, 25 A.3d 122, 128–29 n.5 (Md. 2011); *accord Rios v. Montgomery Cnty.*, 872 A.2d 1, 19 (Md. 2005).

Public official immunity applies "when the actor is (1) a public official, (2) the tortious conduct occurred in the course of the actor's performance of discretionary, rather than ministerial acts, and (3) those acts were within the scope of the actor's official duties." *Id.* Crucially, public official immunity does not apply where a public official acts with malice or commits an intentional or constitutional tort. *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 297–98 (D. Md. 2020); *see also Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 233 (4th Cir. 2002) ("Neither statutory nor common law immunity is available to a Maryland public official who acts with malice." (citing *DiPino v. Davis*, 729 A.2d 354, 370 (Md. 1999)); *Houghton v. Forrest*, 989 A.2d 223, 228 (Md. 2010) ("For more than twenty years, however, [the Supreme Court of Maryland] has held that common law public official immunity does not apply to intentional torts."). Maryland courts define malice as "conduct characterized by evil or wrongful motive,

16

intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Barbre v. Pope*, 402 Md. 157, 935 A.2d 699, 714 (Md. 2007) (citations omitted).

In Maryland, "law enforcement officers are public officials and, thus, fall within the scope of qualified immunity as to their discretionary acts." *Williams v. Baltimore*, 751 A.3d 41, 61 (Md. 2000); *see also Robinson v. Bd. of Cnty. Comm'rs for Prince George's Cnty.*, 278 A.2d 71, 74 (Md. 1971) (recognizing immunity where police officers act without malice). Police officers act with discretion when they act "within the scope of their law enforcement function," including when they conduct an arrest. *Cooper v. Doyle*, No. DKC 22-0052, 2022 WL 16923857, at *3 (D. Md. Nov. 14, 2022). Here, Plaintiff's battery and false imprisonment claims against Officer Defendants are intentional tort claims that can only advance "when there is no legal authority or justification" to support the officers' actions. *Johnson v. Prince George's Cnty.*, No. DKC-10-0582, 2011 WL 806448, at *6 (D. Md. Mar. 1, 2011).

Truant has sufficiently alleged facts that, if proven, would establish that he was forcefully arrested without legal justification. Plaintiff's allegations that Defendant Persuhn aimed his service weapon at Plaintiff while he was seated in his stopped vehicle, ordered him to exit his vehicle, and falsely informed other officers that a suspicious subject was following him all suggest that Defendant Persuhn acted without legal justification to arrest Truant. Similarly, Plaintiff sufficiently alleges that the use of force during his arrest was unjustified by alleging that he informed Officer Defendants of his activity—including dialing emergency services—and that he followed Officer Defendants' orders to the best of his ability while communicating when he was not physically able to comply. Therefore, Plaintiff has sufficiently

pled battery and false imprisonment as intentional torts to which public official immunity does not apply.

Defendants' assertion that Plaintiffs must allege malice to overcome public official immunity is incorrect as to Plaintiff's intentional tort claims. As Judge Chasinow of this Court has noted, regardless of a showing of malice, public official immunity does not apply to intentional torts such as battery and false imprisonment. *Johnson*, 452 F. Supp. 3d at 297–98. Because Plaintiff has sufficiently alleged that Officer Defendants acted without legal justification, Plaintiff's claims for battery (Count II) and false imprisonment (Count IV) shall proceed to discovery.

## IV.    Malicious Prosecution (Count III)

To establish a claim for malicious prosecution, a plaintiff must allege "(1) a criminal proceeding instituted or continued by defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceeding in favor of the plaintiff." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). As this Court has recognized, placement on a "stet" docket is not a favorable termination of a criminal prosecution for the purposes of a malicious prosecution claim in Maryland. *Osborne v. Georgiades*, RDB-14-182, 2017 WL 3978485, at *4 (D. Md. Sept. 11, 2017); *see also Williams v. Prince George's Cnty.*, 157 F. Supp. 2d 596, 605–06 (D. Md. 2001) (holding that removal to a stet docket did not meet the favorable termination element of a malicious prosecution claim); *State v. Meade*, 647 A.2d 830, 840 (Md. 1994), *superseded by statute on other grounds*, 780 A.2d 410, 435 (Md. App. 2001) (holding a plaintiff cannot bring a malicious

prosecution claim where his criminal case terminated in placement on the stet docket).

Here, Plaintiff concedes that his criminal case terminated in a placement on the stet docket but argues that such a termination reflected the State's unwillingness and inability to prosecute the criminal charge. Plaintiff analogizes his case to *Fitzwater v. Tasker*, 269 A.2d 588 (Md. 1970), in which the Supreme Court of Maryland[14] deemed placement on a stet docket a favorable termination for the purposes of a malicious prosecution claim where the lower court signed a letter that the placement "in effect mean[t] that the State was unwilling and unable to prosecute." *Id.* at 590, 592. In response, Defendants correctly assert that the termination of Plaintiff's case on the stet docket precludes any claim of malicious prosecution.

Plaintiff's analogy to *Fitzwater* is inapt. The *Fitzwater* court determined that the termination of the case in a stet docket there was improper and should have been a *nolle prosequi. Id.* at 592. Moreover, the *Fitzwater* court emphasized that the facts of the case explicitly demonstrated that the State did not wish to further prosecute the case and the trial court had provided a letter stating such. *Id.* at 590. Here, there is no such explicit admission of an inability or unwillingness to further prosecute the case. Accordingly, the termination of Plaintiff's criminal case in placement on the stet docket is not a favorable outcome for the purposes of a malicious prosecution claim. *See Meade*, 642 A.2d at 40 (stet is not a favorable termination); *Hines v. French*, 852 A.2d 1047, 1057 (Md. App. 2004); *Cofield v. City of Baltimore*, No. GLR-14-3976, 2015 WL 4040605, at *5 (D. Md. June 30, 2015); *Williams*, 157 F. Supp. 2d at 605; *Osborne*, 2017 WL 3978485, at *4.

---

[14] At the time of *Fitzwater*, the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022 general election, voters in Maryland ratified a constitutional amendment changing the name of the "Court of Appeals of Maryland" to the "Supreme Court of Maryland." The name change took effect on December 14, 2022.

Accordingly, Defendants' Motion to Dismiss (ECF No. 8) is GRANTED as to Plaintiff's malicious prosecution claim, and Count III is DISMISSED WITH PREJUDICE.

## V.      Violation of Article 26[15] of the Maryland Declaration of Rights (Count VI)

In his Article 24 claim—which, as further explained below, this Court construes as an Article 26 claim—Plaintiff asserts that the Officer Defendants deprived him of his Fourth Amendment right to be free from unreasonable seizures and unreasonable force. (ECF No. 4 ¶ 122.) Specifically, Plaintiff alleges that Defendant Persuhn's use of his service weapon constituted unreasonable force under the circumstances. (*Id.* at ¶ 124.) Plaintiff also seems to allege that Plaintiff's seizure was unreasonable because the Officer Defendants knowingly fabricated probable cause for Plaintiff's arrest. (*Id.* at ¶¶ 122–126.) Defendants do not substantively address Plaintiff's Article 24 claim but instead argue it should be dismissed for procedural defects. Specifically, Defendants allege that Plaintiff failed to meet the notice requirement of Maryland's Local Government Tort Claims Act ("LGTCA") and failed to plead malice such that Officer Defendants are entitled to immunity.[16] (ECF No. 8-1 at 3, 6.)

Article 24 of the Maryland Declaration of Rights ensures that "no man ought to be . . . deprived of his life, liberty or property." MD. CONST. DECL. OF RTS., art. XXIV ("Article 24"). In its guarantees and application, Article 24 "is the state law equivalent of the Fourteenth Amendment of the United States." *Rosa v. Bd. of Educ. Of Charles Cnty., Md.*, No. 8:11-CV-02873-AW, 2012 WL 3715331, at *6 (D. Md. Aug. 27, 2012) (citing *Pitensberger v. Pitensberger*, 410 A.2d 1052, 1056 (Md. 1980)). Accordingly, as a substantive matter, Article 24

---

[15] As discussed *supra*, the Court's analysis of Plaintiff's Article 26 claim in Count VI also applies to Truant's § 1983 claim in Count V.

[16] As discussed *supra*, Plaintiff substantially complied with the notice requirements of LGTCA.

is interpreted coextensively with the Fourteenth Amendment to the U.S. Constitution. *Taylor v. Go-Getters, Inc.*, No. 20-cv-3624, 2021 WL 5840956, at *16 (D. Md. Dec. 9, 2021).

Although Plaintiff alleges an Article 24 claim, his claim raises rights protected by Article 26 of the Maryland Declaration of Rights. Article 26 of the Maryland Declaration of Rights bestows due process in seizure of person or property. MD. CONST. DECL. OF RTS., art. XXIV. Article 26 ensures the same protections afforded by the Fourth Amendment and is interpreted and applied correspondingly. *Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 504 (D. Md. 2014). "The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of 'seizures effectuated by excessive force.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (citation omitted). As this Court has recognized, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a [Fourteenth Amendment] 'substantive due process' approach." *Nicholson v. Balt. Police Dep't*, No. DKC-20-3146, 2023 WL 4549741, at *8 (D. Md. July 14, 2023) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Barnes v. Montgomery Cnty.*, 798 F. Supp. 2d 688, 700 (D. Md. 2011). Here, Plaintiff's Article 24 claim appears to allege excessive force and unreasonable search and seizure in violation of the Fourth Amendment. (ECF No. 4 ¶¶ 122–124.) As such, this Court will construe Plaintiff's Article 24 claim as though it were an Article 26 claim.

Public official immunity does not justify dismissal of Plaintiff's claim under the Maryland Declaration of Rights. As the Maryland Supreme Court has recognized, "[a] state public official alleged to have violated Article 24, or any article of the Maryland Declaration

of Rights, is not entitled to qualified immunity." *Okwa v. Harper*, 757 A.2d 118, 140 (Md. 2000); *see also Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004) (collecting cases). Article 19 of the Maryland Declaration of Rights "precludes the application of public official immunity to constitutional torts." *Lee*, 863 A.2d at 309. Therefore, Officer Defendants are not entitled to public official immunity against Plaintiff's constitutional tort claim.

Plaintiff has alleged facts sufficient to support his claim that Officer Defendants used unreasonable force by aiming a service weapon at Plaintiff while he was still seated in his vehicle and forcefully hitting Plaintiff's head during the arrest. Similarly, Plaintiff sufficiently alleges that Defendant officers conducted an unreasonable arrest without probable cause. Plaintiff alleges that Defendant Persuhn fabricated probable cause for Plaintiff's arrest by falsely informing Officer Defendants that Plaintiff was suspiciously following him. Accordingly, Count VI will proceed to discovery.

## VI.   Negligent Hiring, Retention, and Supervision (Count VII)

Plaintiff's negligent hiring, retention, and supervision claim against BCPD alleges that at the time of Plaintiff's arrest, BCPD should have known of Defendant Persuhn's pattern of harassment against Baltimore County citizens. Specifically, Plaintiff alleges that on June 7, 2018, more than a year before Plaintiff's encounter with Defendant Persuhn, a viral video captured Defendant Persuhn stopping an African American man without justification and invading the man's personal space. (ECF No. 4 ¶¶ 128–132.) Plaintiff alleges that because the viral video garnered public scrutiny, BCPD knew or should have known of Defendant Persuhn's actions and should have provided appropriate discipline or training. (*Id.* ¶¶ 131–133.) Plaintiff alleges that because BCPD failed to act as would a reasonable employer,

Defendant Persuhn was not disciplined and was able to harm Plaintiff on December 29, 2019. (*Id.* ¶¶ 132, 134–135.)

Defendants correctly argue that BCPD cannot be sued under Maryland law because it is not a cognizable entity distinct from Baltimore County. (ECF No. 8 at 1); *see also Boyer v. State*, 594 A.2d 121, 128 n.9 (Md. 1992) (holding that a county sheriff's department is not a legal entity subject to suit under Maryland law); *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 393 (4th Cir. 2014) (noting that "an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland law"). As noted above, this Court will construe this claim as if it is against Baltimore County. Defendants further argue that to the extent Count VII is construed against Baltimore County, governmental immunity from negligence claims bars Plaintiff from raising it. (ECF No. 8-1 at 2.) According to Defendant, counties in Maryland retain immunity from liability for non-constitutional torts based on governmental activity. (*Id.*) Instead, Maryland counties must indemnify county employees who commit non-malicious, tortious acts within the scope of their employment. (*Id.*) As such, Defendants assert that any state tort law claims must proceed only against individual county employees, rather than against the county itself. (*Id.* at 3.)

Under Maryland law, "the tort of negligent selection, training, or retention, like any negligence action, requires the plaintiff to prove the existence of four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted" from the alleged breach. *Jones v. State*, 38 A.3d 333, 343 (Md. 2012); *accord Buettner-Hartsoe v. Baltimore Lutheran High Sch. Assoc.*, No. RDB-20-3132, 2021 WL 2580385, at *11 (D. Md. Jun. 23, 2021). However, "Maryland

23

law is well settled that a county (or municipality) generally enjoys immunity against common law tort liability arising out of acts that are governmental, as opposed to acts that are private or proprietary." *Clark v. Prince George's Cnty.*, 65 A.3d 785, 790 (Md. App. 2013) (citing *DiPino*, 729 A.2d at 370). Whether an entity is acting in a governmental or proprietary capacity turns on whether the activity is intended to "promote the welfare of the whole public" and is devoid of any "private interest." *Austin v. City of Baltimore*, 286 Md. 51, 53, 65 (1979).

Maryland courts have consistently held that "[t]he operation by a county of its police department is quintessentially governmental." *Clark*, 65 A.3d at 791; *see also Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 697 (D. Md. 2006); *Williams v. Prince George's Cnty.*, 157 F. Supp. 2d 596, 604 (D. Md. 2001). Here, Plaintiff's negligent hiring claim goes to Baltimore County's operation of its police department, a quintessentially governmental action to which Baltimore County is entitled to immunity. Accordingly, Plaintiff's negligent hiring claim (Count VII) is DISMISSED WITH PREJUDICE.

## VII.   Indemnification (Count VIII)

The final count of Plaintiff's Complaint raises an indemnification claim against BCPD and asserts that BCPD should be ordered to indemnify Officer Defendants for any judgment entered against them in this matter. Defendants respond that the indemnification claim should be dismissed because indemnification is not an independent cause of action. (ECF No. 8-1 at 5.)

The LGTCA provides that a "local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." MD. CODE ANN., CTS. & JUD.

PROC. § 5-303(b)(1). The LGTCA explicitly notes that BCPD is such a "local government."
*Id.* § 5-301(d)(21). Furthermore, the LGTCA provides that a local government cannot assert
sovereign immunity as a defense against claims for indemnification.[17] *Id.* § 5-303(b)(2). Given
that Plaintiff in this case has alleged claims against Officer Defendants that will survive
Defendants' Motions to Dismiss, the Plaintiffs' claim for indemnification under Count VIII
must also survive. *See McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 287–88 (D. Md. 2020)
(noting that an indemnification claim before final judgment may encourage a case's efficient
resolution). Accordingly, Plaintiff's indemnification claim will proceed to discovery.

## CONCLUSION

For the reasons stated above, Officer Defendants' Motion to Modify Letter Order, or
in the Alternative for Leave to File a Motion for a More Definite Statement (ECF No. 13) is
DENIED.

Defendants H.R. Persuhn, Jeremy Boothe, Alborz Doorandish, Gregory A. Page,
Wesley Allinson, Kenneth A. Lucas, Cheyne E. Hicks, and Baltimore County Police
Department's Combined Motion to Dismiss (ECF No. 8) is GRANTED IN PART and
DENIED IN PART. Specifically, the Motion (ECF No. 8) is GRANTED as to Counts I, III,
and VII, which are DISMISSED WITH PREJUDICE as to all Defendants. The Motion (ECF
No. 8) is DENIED as to Counts II, IV, VI, and VIII. Defendants shall file an answer the

---

[17] As Judge Gallagher of this Court has explained, the LGTCA provides that "any 'local government,' which includes the BPD, 'shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment.'" *Johnson*, 452 F. Supp. 3d at 319 (citing MD. CODE ANN., CTS. & JUD. PROC. § 5-303(b)(1), (d)(1)(21)). In *Johnson*, Judge Gallagher held that dismissal of the plaintiffs' claim for indemnification was premature given that the plaintiffs had alleged claims against individual Baltimore Police Department ("BPD") detectives and the LGTCA waived State sovereign immunity in the context of indemnification. *Id.* at 319–20.

Plaintiff's remaining claims for battery (Count II), false imprisonment (Count IV), violation of 42 U.S.C. § 1983 (Count V), violation of Article 24 of the Maryland Declaration of Rights (Count VI), and indemnification (Count VIII) within fourteen (14) days of this Memorandum Opinion and Order.

A separate Order follows.

Dated: December 12, 2023                                    _____/s/_____

                                                           Richard D. Bennett
                                                           United States Senior District Judge